**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          dguerra@bursor.com
          jglatt@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYISHA DANZY, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>THE KRAFT HEINZ COMPANY d/b/a. CAPRI-SUN,<br><br>                              Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Tyisha Danzy ("Plaintiff") brings this action on behalf of herself and all others similarly situated against The Kraft Heinz Company d/b/a Capri-Sun ("Defendant" or "Capri-Sun"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings claims on behalf of herself and others similarly situated who purchased Defendant's Capri-Sun 100% Juice Fruit Punch drink represented as being "100% Juice" and "flavored with 100% juice blend from concentrate" (the "Product").

2.      These representations together signal to reasonable consumers, like Plaintiff, that the Product is comprised of solely fruit and fruit-derived ingredients. Instead, and unbeknownst to Plaintiff who purchased the Product relying on Defendant's representation that the Product is comprised exclusively of juice and juice products, the Product is made with synthetic, non-natural citric acid; a human-made preservative and flavor additive.

3.      Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (4) Breach of Express Warranty.

## PARTIES

4.      Plaintiff Tyisha Danzy is a citizen of California and resident of Alameda County, California. Plaintiff purchased Defendant's Capri-Sun 100% Juice Fruit Punch drink online from Costco in February 2025. Prior to making her purchase, Plaintiff saw and relied on Defendant's on-label representations that the Product was made from "100% Juice" and "flavored with 100% juice blend from concentrate" and so reasonably understood that the Product was comprised solely of juice and juice products. Plaintiff saw these representations and warranties prior to and at the time of her purchase. Thus, Plaintiff reasonably relied on Defendant's representations when she decided to purchase the Product. Accordingly, these representations and warranties were part of

the basis of her bargain, in that Plaintiff would not have purchased the Product on the same terms had she known that these representations and warranties were untrue.  Furthermore, in making her purchase, Plaintiff paid a price premium due to Defendant's false and misleading claims regarding the Product's purported fruit juice content.  Plaintiff, however, did not receive the benefit of the bargain because the Product did not, in fact, contain exclusively 100% juice because it contained citric acid, a synthetic, non-juice product additive.  Had Plaintiff known that Defendant's representations and warranties about the Product were false and misleading, Plaintiff would not have purchased the Product or would have paid substantially less for it.

5.      Plaintiff remains interested in purchasing the Product from Defendant in the future.  However, unless and until she can determine if the Product is accurately labeled and properly discloses the preservative and flavor additive in the Product, Plaintiff will be unable to rely on the truth of Defendant's labeling.  So long as the Product is labeled as being comprised of 100% juice—when it contains non-juice, synthetic ingredients—Plaintiff will be unable to make informed decisions about whether to purchase the Product in the future and will be unable to evaluate the different prices between Defendant's Product and competitors' products.  Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward.  Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Product actually conforms to Defendant's representation that the Product is comprised of only 100% juice.

6.      Defendant The Kraft Heinz Company is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  Defendant manufacturers, markets, and sells its juice products through California and the United States.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs and at least one member of the proposed Classes is a citizen of a state different from Defendant.

8.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the benefits of doing business in this District by selling its Product to consumers in this District.  This Court also has personal jurisdiction over Defendant because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and acts giving rise to the claims herein occurred in this District and Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

**A.    Defendant's 100% Juice Product**

10.    Defendant sells multiple varieties of Capri-Sun branded fruit juice drinks prominently advertised as being comprised of 100% juice.

11.    Plaintiff purchased the Capri-Sun 100% Juice Fruit Punch drink prominently claiming to be comprised of "100% Juice."  In a font smaller than its "100% Juice" representation, Defendant adds that the Product is "flavored 100% juice blend from concentrate" and, in an even smaller font, adds that the Product is made "with added ingredients and other natural flavor."



12.     By explaining on the front label that the "100% Juice" and "flavored 100% juice blend from concentrate," Defendant doubles down on its "100% Juice" representation.  It makes clear to reasonable consumers that *only* juice products comprise its "100% Juice" product.

13.     Defendant reinforces its "100% Juice" representation by stating on the packaging that the Product has "No Artificial Colors, Flavors or Preservatives."



1

**B.      Citric Acid and Mislabeling**

2         14.     Citric acid "is one of the most common additives in food and beverage products

3   across the world."[1]  Although citric acid is naturally occurring, in 2021, commercial, global

4   production of the additive was estimated to be about 736,000 tons per year.[2]  As explained by drink

5   brand Drink Sound, "[a] vast majority of the citric acid that [consumers] see in packaged foods …

6   is not from citrus fruit but instead manufactured in bulk."[3]  Accordingly, "it is not the naturally

7   occurring citric acid, but the *manufactured* citric acid [] that is used extensively as a food and

8   beverage additive."[4]  In fact, "over 90% of the world's citric acid production is manufactured using

9   three methods: Submerged fermentation (SF), liquid surface fermentation (LSF), and solid-state

10  fermentation (SSF)."[5]

11        15.     By some estimates, "[a]proximately 99% of the world's production of [citric acid] is

12  carried out using the fungus *Aspergillus niger* since 1919."[6]

13        16.     The Food and Drug Administration ("FDA") explains that the "Solvent extraction

14  process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus*

15  *niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with

16  the following conditions: (a) The solvent used in the process consists of a mixture of n- octyl

17  alcohol meeting the requirements of § 172.864 of this chapter, *synthetic* isoparaffinic petroleum

18  hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine.  12

19  ───────────────
    [1] Env't Protection Agency, *Citric Acid Supply Chain – Executive Summary*, available
20  https://www.epa.gov/system/files/documents/2023-
    03/Citric%20Acid%20Supply%20Chain%20Profile.pdf (last accessed July 15, 2025).

21  [2] Bikash Chandra Behera, et al., *Microbial Citric Acid: Production, Properties, Application, and
    Future Perspectives*, (Feb. 1, 2021) available https://onlinelibrary.wiley.com/doi/10.1002/fft2.66
22  (last accessed July 15, 2025).

23  [3] Drink Sound, *Citric Acid: Why Is It In Everything?*, available https://drinksound.com/blogs/sip-
    on/citric-acid-why-is-it-in-everything (last accessed July 15, 2025).

24  [4] Illiana E. Sweis & Bryan C. Cressey, *Potential Role of the Common Food Additive Manufactured
    Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States:
25  A Series of Four Case Reports*, 5 Toxicology Rep. (2018) 808-812, available doi:
    10.1016/j.toxrep.2018.08.002 (last accessed July 15, 2025).

26  [5] Ewelina Ksiazek et al, *Citric Acid: Properties, Microbial Production, and Applications in
    Industries*, 29(1) Molecules (Jan. 2024) available doi: 10.3390/molecules29010022 (last accessed
27  July 15, 2025).

28  [6] Iliana E. Sweis & Bryan C. Cressey, *supra* note 4.

─────────────────────────────────────────────

C.F.R. § 173.280 (emphasis added).  Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor.  *See* 21 C.F.R § 173.280.  Accordingly, the U.S. Food and Drug Administration ("U.S. F.D.A.") considers citric acid as a food additive.[7]

17.    Defendant's representations are misleading to a reasonable consumer.  Food is considered misbranded "[i]f it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact[.]"  21 C.F.R. § 343(k).  Merely referring to citric acid on the principal display panel—which Plaintiff viewed and relied on Defendant's representations—as a vague "ingredient" does not sufficiently clarify the misleading label.  This is so because a reasonable consumer is not expected to look beyond the misleading representations on the front of the box to discover the truth from the small-print ingredient list on the side of the box.  *See Willaims v. Gerber Prods. Co.*, 552 F. 3d 934, 939 (9th Cir. 2008).

18.    Indeed, by vaguely referring to citric acid as one of the "added ingredients," Defendant fails to properly identify citric acid which "shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods."  21 C.F.R. § 102.5(a).  In other words, Defendant fails to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."  *Id.*  Accordingly, Defendant's "100% Juice" representation is false and misleading as it contains less than entirely juice.

19.    In fact, just like Defendant's misbranded product here, in 2015, the U.S. F.D.A. informed fruit product producer Chiquita Bananas that its Pineapple Bites and Pineapple Bites with Coconut products were "misbranded within the meaning of section 403(k) of [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail[ed] to declare these preservatives with a description of their functions."[8]

---

[7] U.S. Food & Drug Admin., *Food Additive Status List*, available https://www.fda.gov/food/food-additives-petitions/food-additive-status-list (last accessed July 15, 2025).

[8] David Bellm, *Food Packaging: FDA Says Chiquita Labels Are Misleading*, Packing Digest (Mar. 11, 2015) available https://www.packagingdigest.com/trends-issues/food-packaging-fda-says-chiquita-labels-are-misleading (last accessed July 15, 2025).

20.    Indeed, it is required that if "[a] food to which a chemical preservative(s) is added shall … bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or to 'promote color retention'." 21 C.F.R. § 101.22(j).  As such, "[i]f the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids … when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase 'with added _____,' the blank filled in with a term such as 'ingredient(s),' 'preservative,' or 'sweetener,' *as appropriate*[.]" 21 C.F.R. § 101.30(b)(1)(3) (emphasis added).  Despite the requirement, Defendant fails to identify the citric acid as a preservative and flavor additive, merely lumping it in with the general ingredients.  This is not enough.

21.    California's Sherman Law expressly incorporates all drug labeling requirements set forth in the FDCA.  See Cal. Health & Safety Code § 110100(a).  The Sherman Law provides that any food is misbranded if it does not conform to FDCA requirements.

22.    Each of Defendant's violations of federal law and regulations are also violations of California's Sherman Law, including, but not limited to, the following sections:

(a)    Section 110100 (adopting all U.S. Food and Drug Administration ("FDA") regulations as state regulations);

(b)    Section 110660 (false or misleading labeling);

(c)    Section 110690 (misleading container);

(d)    Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

(e)    Section 110765 (misbranding food);

(f)    Section 110770 (reception or delivery of misbranded food).

23.    Thus, by labeling the Product as "100% Juice," and "100% Juice Blend From Concentrate with other added ingredients and natural flavor," without stating the citric acid's function, Defendant rendered the Product misbranded and therefore illegal and unfit for sale in trade or commerce.

**C.      Consumers' Juice and Natural Flavor Preferences**

24.     "Every time you add a bottle of '100% fruit juice' to your cart, you probably thought several fruits had to be squeezed and pressed for its juice to be extracted.  After all, that's what the wording suggest."[9]  To that end, "[c]lean label claims resonate for purchasers of … juices and include natural, no artificial flavors, and no artificial colors."[10]  In fact, at least one survey found that "Americans are paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients" while "[a]bout half of Americans say they seek out natural flavors at least some of the time [and] artificial flavors, colors, sweeteners and preservatives were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time."[11]

25.     In fact, recent consumer research shows that "[f]ruit juices are often marketed as healthy options, but misleading fruit juice claims can confuse consumers.  Terms like '100% fruit juice,' … can sometimes be used to make the products appear healthier than they actually are."[12]  Indeed, the term 100% Juice "suggests that the product is made entirely from the juice of fruits, with no added sugars, preservatives, or artificial ingredients."[13]

26.     As once clinical nutritionist has explained, "[f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup[.]"  Accordingly, "[c]ompanies continuously capitalize on an ignorance-based market."[14]

---

[9] Zakiyah Ebrhim, *Why the '100% Fruit Juice' Label Is A Lie*, News24 (Sept. 2, 2022) available https://www.news24.com/life/wellness/diet/why-the-100-fruit-juice-label-is-a-lie-20220902-2 (last accessed July 15, 2025).

[10] Innova Market Insights, *Food Trends: US Consumer Preferences* (May 14, 2024) available https://www.innovamarketinsights.com/trends/food-trends/ (last accessed July 15, 2025).

[11] Food Insight, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021) available https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed July 15, 2025).

[12] Rashi Chaudhary, *Consumer Awareness: What You Need To Know About Fruit Juice Claims*, Omjoos (Sept. 17, 2024) available https://www.omjoos.com/news-and-blog/2024/09/17/consumer-awareness-what-you-need-to-know-about-fruit-juice-claims/?srsltid=AfmBOooEq9DDWAPA0Q_i14WvIM-0NNwcbRdc_lzd4jI_J0VKUtzxQ2hp (last accessed July 15, 2025).

[13] *Id.*

[14] Serge Gregoire, *Avoid Citric Acid: A Mold Byproduct!* (July 13, 2021) *available* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/.

27.    Knowing this, producers, like Defendant, aim to capitalize on market preferences by labeling products as containing "100% Juice" and anthropomorphizing the Product as "The Picky One – one who will only accept 100%" and "100% Juice: Whole fruit juice":



*See also* Figure 1 (marketing image showing Defendant's drink lines, including 100% Juice line that prominently features the "100% Juice" representation as a distinguishing feature of the Product's line).[15]

---

[15] *Available* at https://www.walmart.com/ip/CapriSun-100-Juice-Fruit-Punch-6-oz-10ct/13908711?wmlspartner=wlpa&selectedSellerId=0&selectedOfferId=57EDA2F99B3541028453B80AA9719A0A&conditionGroupCode=1&wl13=2648&gclsrc=aw.ds&adid=222222222277139 08711_161193766053_21214199653&wl0=&wl1=g&wl2=c&wl3=697173827980&wl4=pla-2348450966064&wl5=9032054&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=local&wl12=13908711&veh=sem_LIA&gad_source=1&gad_campaignid=21214199653&gbraid=0AAAAA DmfBIqZNmDt_qEJ9citim-b1i0hZ&gclid=CjwKCAjwvuLDBhAOEiwAPtF0VqRigmkHbMVdAPlQtLd8LMZgYrheUNSjiD ytOCMWVDSnKQbUW1pDehoCF_0QAvD_BwE (last accessed August 1, 2025).

1

**Figure 1**



28.    Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: pure juice representations made clearly and conspicuously on the front labels while inconspicuously disclosing contradictory ingredient information in small, inconspicuous font on the other side of the packaging.

## **FED. R . CIV. P. 9(B) ALLEGATIONS**

29.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Though Defendant is best situated to know the composition of its Product, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

(a)    **WHO:**  The Kraft Heinz Company

(b)    **WHAT:** Defendant's conduct here was, and continues to be, deceptive because it omitted and concealed that the Product contains citric acid, a synthetic preservative and flavor additive, despite affirmatively representing that the Products are comprised wholly of juice. This false and misleading representation was material to Plaintiff and the Classes because they would not have paid the same amount for the Product or would not have purchased the Product at all had they known the Product contained this synthetic, non-juice preservative and flavor additive, and so was not comprised of 100% juice and juice byproducts.  Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its expertise and offering of products, as described above, yet it continued to pervasively market the Product in this manner in California and the United States.

(c)    **WHEN:** Defendant made material misrepresentations and omissions to Plaintiff and the members of the Classes during the putative class period, including prior to and at the time of purchase, despite its knowledge that the Product did not, in fact, contain exclusively 100% juice and juice byproducts.  Plaintiff and Class Members viewed the packaging of the Product when purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Product did not contain any ingredients other than juice and juice byproducts.

(d)    **WHERE:** Defendant made material misrepresentations and omissions on the Product's labels and packaging and marketing materials.

(e)    **HOW:** Defendant made material misrepresentations and omissions of fact regarding the Product by representing and warranting that the Product was comprised of 100% juice and juice byproducts.  Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Product.

(f)    **INJURY:** Plaintiff and members of the Classes purchased, and paid a premium (up to the full purchase price), or otherwise paid more for the Product than they would have, or alternatively they would not have purchased the Product at all, absent Defendant's misrepresentations and omissions.

1

## CLASS ALLEGATIONS

2

30.     Plaintiff brings this action on behalf of herself and all others similarly situated

3

pursuant to Federal Rules of Civil Procedure 23, defined as:

4

5

   *Nationwide Class*:  All persons in the United States who, during the maximum
   period of time permitted by law, purchased Defendant's Product primarily for
   consumption (the "Nationwide Class").

6

7

   *California Subclass:*  All persons in California who, during the maximum period of
   time permitted by law, purchased Defendant's Product primarily for consumption
   (the "California Subclass").

8

9

31.     The Classes do not include (1) Defendant, its officers, and/or directors; (2) the

10

Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and

11

family; and (4) Plaintiff's counsel and Defendant's counsel.

12

32.     Plaintiff reserves the right to amend the above class definitions and add additional

13

classes and subclasses as appropriate based on investigation, discovery, and the specific theories of

14

liability.

15

33.     *Community of Interest:*  There is a well-defined community of interest among

16

Members of the Classes, and the disposition of the claims of these Members of the Classes in a

17

single action will provide substantial benefits to all parties and to the Court.

18

34.     *Numerosity*:  While the exact number of members of the Classes is unknown to

19

Plaintiff at this time, and can only be determined by appropriate discovery, upon information and

20

belief, members of the Classes number in the millions.  Members of the Classes may be notified of

21

the pendency of this action by mail and/or publication through the distribution records of

22

Defendant and third-party retailers and vendors.

23

35.     *Existence and Predominance of Common Questions of Law and Fact*:  Common

24

questions of law and fact exist as to all members of the Classes and predominate over any

25

questions affecting only individuals of the Classes.  These common legal and factual questions

26

include, but are not limited to:

27

   (a)  Whether Defendant's Product was comprised exclusively of 100% fruit juice;

28

(b) Whether Defendant's Product contained synthetic preservatives and flavor additives contrary to a reasonable consumer's understanding of Defendant's label claims;

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning its juice content to be untrue and misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether Defendant was unjustly enriched as a result of its unlawful conduct alleged in this Complaint;

(f) Whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

(g) Whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.;* and,

(h) Whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

36.    ***Typicality:***  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the fruit juice composition of its Product, purchased the deceptive Product in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

37.    ***Adequacy:***  Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interest of the Members of the Classes.  Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

38.    ***Superiority:***  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress of their claims other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and

would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750,** *et seq*.
**(On Behalf of Plaintiff and the California Subclass)**

39.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

40.    Plaintiff brings this claim individually and on behalf of herself, and the California Subclass against Defendant.

41.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

42.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

43.    Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

44.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers by advertising that the Product contained exclusively 100% juice even though it contains a synthetic additive.

45.    Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

46.    On May 5, 2025, prior to filing this action, Plaintiff sent a pre-suit notice letter pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.  Defendant failed to remedy the issues raised in the letter.

47.    Plaintiff and the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the Plaintiff and California Subclass)**

48.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

49.    Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

50.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

51.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for her personal use.  In so doing, Plaintiff relied upon Defendant's false representations that the Product was comprised of exclusively "100% Juice" when the Product actually contained a synthetic additive.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

52.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

53.     Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

54.     Defendant violated the UCL's proscription against engaging in **<u>Unlawful Business Practices</u>** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*, CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), and California's Sherman Law, Cal. Health & Safety Code § 109875, *et seq*., as alleged above. Defendant also violated the UCL's unlawful prong because the Product is misbranded pursuant to federal regulations.

55.     Defendant's acts, omissions, and practices concerning the Product constitutes "unlawful" business acts and practices in that they violate the CLRA, FDCA and, by extension, California's Sherman Law, and implementing regulations including, at least, the following sections:

       (a)     Section 110100 (adopting all FDA regulations as state regulations);

       (b)     Section 110660 (false or misleading labeling);

       (c)     Section 110690 (misleading container);

       (d)     Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

       (e)     Section 110765 (misbranding food);

       (f)     Section 110770 (reception or delivery of misbranded food).

56.     Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive "100% Juice" representations have misled consumers into purchasing the Product over other truthfully labeled competitors.

57.     Plaintiff and the California Subclass suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of citric acid, a synthetic preservative and flavor additive.

58.     There is no benefit to consumers or competition from deceptively marketing that the Product is comprised of 100% juice when it is not.

59.     The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

60.     Plaintiff and the Subclass could not have reasonably avoided their injury or known that the Product's prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures.  As such, they could not have reasonably avoided the injury they suffered.

61.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff and the other members of the Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

1
2
3

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

4      62.    Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

5      63.    Plaintiff brings this claim on behalf of herself and the California Subclass against

6   Defendant.

7      64.    Defendant's acts and practices, as described herein, have deceived and/or are likely

8   to continue to deceive members of the California Subclass, and the public.  As described

9   throughout this Complaint, Defendant misrepresents that the Product is comprised of 100% juice

10  and juice products.  Thus, consumers reasonably understand that the Product is free of anything

11  other than juice or juice products, including synthetic preservatives and flavor additives like citric

12  acid.

13     65.    By Defendant's actions, they have disseminated uniform advertising regarding the

14  Product across California and the U.S.  The advertising was, by its very nature, unfair, deceptive,

15  untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such

16  advertisements were intended to, and likely did, deceive the consuming public.

17     66.    The above-described false, misleading, and deceptive advertising Defendant

18  disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented

19  that the Product is comprised of 100% juice when it contains citric acid, a synthetic, non-juice

20  preservative and flavor additive.

21     67.    In making and disseminating these statements, Defendant knew, or should have

22  known, that its advertising was untrue and misleading in violation of California law.  Plaintiff and

23  the members of the Subclass based their purchasing decisions on Defendant's material false and

24  misleading representations and warranties about the composition of its Product.  Plaintiff and the

25  Subclass were injured in fact and lost money and property as a result, in an amount to be proven at

26  trial.

27
28

68.    The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

69.    Accordingly, Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

<u>**COUNT IV**</u>
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class)**

70.    Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

71.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

72.    Plaintiff brings this claim under the laws of the State of California.

73.    Plaintiff and the Nationwide Class Members formed a contract with Defendant at the time Plaintiff and the Nationwide Class Members purchased the Product.

74.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging that it was comprised of wholly 100% juice.

75.    This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide Class and Defendant.

76.    As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warrant that the Product is comprised of 100% juice and therefore free of synthetic, non-juice preservatives and flavor additives.  However, Defendant breached its express warranties about the Product by including citric acid, an artificial, synthetic preservative and flavor additive, thereby rendering the prominent "100% Juice" representation false and misleading.  Simply, the Product does not conform to Defendant's representations and warranties.

77.     Plaintiff and the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

78.     Plaintiff and the members of the Nationwide Class would not have purchased the Product had they known the true nature of the Product.

79.     As a result of Defendant's breach of express warranty, Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to damages, in addition to costs, interest and fees, and attorneys' fees, as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

   a)   For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

   b)   For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

   c)   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

   d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

   e)   For prejudgment interest on all amounts awarded;

   f)   For an order of restitution and all other forms of equitable monetary relief;

   g)   For injunctive relief as pleaded or as the Court may deem proper;

   h)   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated:  August 11, 2025                    **BURSOR & FISHER, P.A**.

                                           By: ___/s/ *L. Timothy Fisher*_____
                                                     L. Timothy Fisher

                                           L. Timothy Fisher (State Bar No. 191626)
                                           Daniel S. Guerra (State Bar No. 267559)
                                           Joshua B. Glatt (State Bar No. 354064)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
  dguerra@bursor.com
  jglatt@bursor.com

*Attorneys for Plaintiff*

1

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

2

I, L. Timothy Fisher, declare as follows:

3

      1.      I am an attorney at law licensed to practice in the State of California and a member

4

of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff who

5

resides in Oakland, California.  I have personal knowledge of the facts set forth in this declaration

6

and, if called as a witness, I could and would competently testify thereto under oath.

7

      2.      The Complaint filed in this action is filed in the proper place for trial under Civil

8

Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred

9

in the Northern District of California.  Additionally, Defendant transacts substantial business in this

10

District, including sales of the Product at issue, and Defendant advertised and marketed the Product

11

at issue to Plaintiff in this District.

12

      I declare under the penalty of perjury under the laws of the State of California and the

13

United States that the foregoing is true and correct and that this declaration was executed at Walnut

14

Creek, California this 11th day of August, 2025.

15

16

                        */s/ L. Timothy Fisher*

                        L. Timothy Fisher

17

18

19

20

21

22

23

24

25

26

27

28