1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          dguerra@bursor.com
          jglatt@bursor.com

*Attorneys for Plaintiff and the Putative Class*

[*Additional Counsel Listed On Signature Page*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYISHA DANZY, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>      v.<br><br>THE KRAFT HEINZ COMPANY d/b/a CAPRI-SUN,<br><br>                                        Defendant. | Case No.: 3:25-cv-06792-VC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Tyisha Danzy ("Plaintiff") brings this action on behalf of herself and all others similarly situated against The Kraft Heinz Company d/b/a Capri-Sun ("Defendant" or "Capri-Sun"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings claims on behalf of herself and others similarly situated who purchased Defendant's Capri-Sun Juice Fruit Punch drink represented as being "made with all natural ingredients" (the "Product").

2.      This representation signals to reasonable consumers, like Plaintiff, that the Product is comprised of solely natural ingredients. Instead, and unbeknownst to Plaintiff who purchased the Product relying on Defendant's representation that the Product is comprised exclusively of natural ingredients, the Product is made with synthetic, non-natural citric acid; a human-made preservative and flavor additive.

3.      Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (4) Breach of Express Warranty; (5) Unjust Enrichment; and (6) Fraud.

## PARTIES

4.      Plaintiff Tyisha Danzy is domiciled in California and resident of Alameda County, California. Plaintiff purchased Defendant's Capri-Sun Juice Fruit Punch drink[1] online from Costco in February 2025. Prior to making her purchase, Plaintiff saw and relied on Defendant's on-label representations that the Product was made with "all natural ingredients," and so reasonably understood that the Product was comprised solely of natural ingredients. Plaintiff saw these representations and warranties prior to and at the time of her purchase. Thus, Plaintiff reasonably

---

[1] Plaintiff reserves the right to add Defendant's substantially similar products to the scope of this Complaint should discovery prove necessary.

relied on Defendant's representations when she decided to purchase the Product. Accordingly, these representations and warranties were part of the basis of her bargain, in that Plaintiff would not have purchased the Product on the same terms had she known that these representations and warranties were untrue. Furthermore, in making her purchase, Plaintiff paid a price premium due to Defendant's false and misleading claims regarding the Product's purported all natural ingredients content. Plaintiff, however, did not receive the benefit of the bargain because the Product did not, in fact, contain exclusively all natural ingredients because it contained citric acid, a synthetic, non-juice product additive. Had Plaintiff known that Defendant's representations and warranties about the Product were false and misleading, Plaintiff would not have purchased the Product or would have paid substantially less for it.

5.       Plaintiff wants to purchase the Product from Defendant in the future. However, unless and until she can determine if the Product is accurately labeled and properly discloses the preservative and flavor additive in the Product, Plaintiff will be unable to rely on the truth of Defendant's labeling. So long as the Product is labeled as being comprised of all natural ingredients—when it contains synthetic ingredients—Plaintiff will be unable to make informed decisions about whether to purchase the Product in the future and will be unable to evaluate the different prices between Defendant's Product and competitors' products. Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward. Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Product actually conforms to Defendant's representation that the Product is comprised of only natural ingredients.

6.       Defendant The Kraft Heinz Company is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. Defendant manufacturers, markets, and sells its juice products through California and the United States.

## JURISDICTION AND VENUE

7.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs and at least one

member of the proposed Classes is a citizen of a state different from Defendant.

8.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the benefits of doing business in this District by selling its Product to consumers in this District.  This Court also has personal jurisdiction over Defendant because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and acts giving rise to the claims herein occurred in this District and Plaintiff resides in this District.

### FACTUAL ALLEGATIONS

**A.    Defendant's "All Natural Ingredients" Representation**

10.    Defendant sells multiple varieties of Capri-Sun branded fruit juice drinks prominently advertised as being comprised of "all natural ingredients."

11.    Plaintiff purchased the Capri-Sun 100% Juice Fruit Punch drink prominently claiming to be comprised of "ALL NATURAL INGREDIENTS."  Defendant thus ensures that consumers understand and believe that the Product is made with *only* natural ingredients.



12.    Defendant reinforces its all natural representations by prominently stating on the side panel that the Product contains "All Natural Ingredients" without "artificial colors, flavors or preservatives." There is no disclosure or disclaimer anywhere on the front or sides of the Product suggesting in any way that the Product contains an artificial ingredients, contrary to the all natural representations.



**B.      Citric Acid and Mislabeling**

13.      Defendant uses artificially manufactured citric acid in the Product.

14.      Citric acid "is one of the most common additives in food and beverage products across the world."[2]  Although citric acid can be naturally occurring in fruits and vegetables, in 2021, commercial, global production of the additive was estimated to be about 736,000 tons per year.[3]  As explained by drink brand Drink Sound, "[a] vast majority of the citric acid that [consumers] see in packaged foods … is not from citrus fruit but instead manufactured in bulk."[4] A study published in the Toxicology Reports Journal found that "it is not the naturally occurring citric acid, but the *manufactured* citric acid [] that is used extensively as a food and beverage additive."[5]  In fact, "over 90% of the world's citric acid production is manufactured using three methods: Submerged fermentation (SF), liquid surface fermentation (LSF), and solid-state fermentation (SSF)."[6]

15.      By some estimates, "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919."[7]

16.      The Food and Drug Administration ("FDA") has explained that "[s]olvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor [that] may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture

---

[2] Env't Protection Agency, *Citric Acid Supply Chain – Executive Summary*, available https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf (last accessed July 15, 2025).

[3] Bikash Chandra Behera, et al., *Microbial Citric Acid: Production, Properties, Application, and Future Perspectives*, (Feb. 1, 2021) available https://onlinelibrary.wiley.com/doi/10.1002/fft2.66 (last accessed July 15, 2025).

[4] Drink Sound, *Citric Acid: Why Is It In Everything?*, available https://drinksound.com/blogs/sip-on/citric-acid-why-is-it-in-everything (last accessed July 15, 2025).

[5] Illiana E. Sweis & Bryan C. Cressey, *Potential Role of the Common Food Additive Manufactured Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States: A Series of Four Case Reports*, 5 Toxicology Rep. (2018) 808-812, available doi: 10.1016/j.toxrep.2018.08.002 (last accessed July 15, 2025).

[6] Ewelina Ksiazek et al, *Citric Acid: Properties, Microbial Production, and Applications in Industries*, 29(1) Molecules (Jan. 2024) available doi: 10.3390/molecules29010022 (last accessed July 15, 2025).

[7] Iliana E. Sweis & Bryan C. Cressey, *supra* note 5.

---

of n-octyl alcohol meeting the requirements of § 172.864 of this chapter, *synthetic* isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine." 12 C.F.R. § 173.280 (emphasis added).  Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor.  *See* 21 C.F.R § 173.280. Accordingly, the U.S. Food and Drug Administration ("U.S. F.D.A.") considers citric acid as a food preservative or additive.[8]

17.    The EPA has similarly noted that citric acid requires sulfuric acid, corn, and calcium hydroxide in its manufacturing process[9]:



18.    Accordingly, the FDA has taken action where brands have labeled their products as "all natural" despite including citric acid in their products.  For example, in 2001 the FDA sent a warning letter to Hirzel Canning Company warning that its Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos products could not be labeled as "All Natural" because they contained citric acid.[10]

---

[8] U.S. Food & Drug Admin., *Food Additive Status List*, available https://www.fda.gov/food/food-additives-petitions/food-additive-status-list (last accessed July 15, 2025).

[9] Environmental Protection Agency, *Citric Acid Supply Chain—Executive Summary*, available chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.epa.gov/system/files/documents/2023-03/Citric+Acid+Supply+Chain+Profile.pdf.

[10] Nicole E. Engowetti, *A National "Natural" Standard For Food Labeling*, 65:2 MAINE L. REV. (Jan. 2013) 582-603, 558, n. 53 *available* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://digitalcommons.mainelaw.maine.edu/cgi/viewcontent.cgi?article=1118&context=mlr.

---

### C.    Consumers' Juice and Natural Preferences

19.    "Clean label claims resonate for purchasers of … juices and include natural, no artificial flavors, and no artificial colors."[11]  In fact, at least one survey found that "Americans are paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients" while "[a]bout half of Americans say they seek out natural flavors at least some of the time [and] artificial flavors, colors, sweeteners and preservatives were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time."[12]

20.    In fact, recent consumer research shows that "[f]ruit juices are often marketed as healthy options, but misleading fruit juice claims can confuse consumers.  Terms like '100% fruit juice,' … can sometimes be used to make the products appear healthier than they actually are."[13]  Indeed, the term 100% Juice "suggests that the product is made entirely from the juice of fruits, with no added sugars, preservatives, or artificial ingredients."[14]  Not to be outdone, Defendant's remaining representations only compound consumers' deception.  "More than 60% of consumers prefer products described as having 'no artificial ingredients' and 'no preservatives' and [] being 'all natural[.]'"[15]  Defendant makes each one of these representations on its Product.

---

[11] Innova Market Insights, *Food Trends: US Consumer Preferences* (May 14, 2024) available https://www.innovamarketinsights.com/trends/food-trends/ (last accessed July 15, 2025).

[12] Food Insight, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021) available https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed July 15, 2025).

[13] Rashi Chaudhary, *Consumer Awareness: What You Need To Know About Fruit Juice Claims*, OMJOOS (Sept. 17, 2024) available https://www.omjoos.com/news-and-blog/2024/09/17/consumer-awareness-what-you-need-to-know-about-fruit-juice-claims/?srsltid=AfmBOooEq9DDWAPA0Q_i14WvIM-0NNwcbRdc_lzd4jI_J0VKUtzxQ2hp (last accessed July 15, 2025).

[14] *Id.*

[15] Donna Berry, *Clean is Clearly the New Norm in Beverages*, FOOD BUS. NEWS (Nov. 11, 2020), *available* https://www.foodbusinessnews.net/articles/17160-clean-is-clearly-the-new-norm-in-beverages#:~:text=CHICAGO%20%E2%80%94%20Consumer%20perceptions%20have%20shifted,interest%20in%20clean%20label%20beverages.

21.     But despite these express representations, "[f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup[.]"  Accordingly, "[c]ompanies continuously capitalize on an ignorance-based market."[16]

22.     Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: natural ingredient representations clearly and conspicuously on the front labels while inconspicuously disclosing contradictory ingredient information in small, inconspicuous font on the other side of the packaging—the details of which are omitted entirely.

## **FED. R . CIV. P. 9(B) ALLEGATIONS**

23.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Though Defendant is best situated to know the composition of its Product, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

(a)     **WHO:** The Kraft Heinz Company

(b)     **WHAT:** Defendant's conduct here was, and continues to be, deceptive because it omitted and concealed that the Products contain a synthetic preservative and flavor additive, despite affirmatively representing that the Products are comprised of natural ingredients. This false and misleading representation was material to Plaintiff and the Classes because they would not have paid the same amount for the Products or would not have purchased the Products at all had they known the Products contained this synthetic, non-juice preservative and flavor additive, and so was not comprised of just natural ingredients.  Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its expertise and offering of products, as

---

[16] Serge Gregoire, *Avoid Citric Acid: A Mold Byproduct!* (July 13, 2021) *available* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/.

described above, yet it continued to pervasively market the Product in this manner in California and the United States.

(c)    **WHEN:** Defendant made material misrepresentations and omissions to Plaintiff and the members of the Classes during the putative class period, including prior to and at the time of purchase, despite its knowledge that the Product did not, in fact, contain exclusively natural ingredients.  Plaintiff and Class Members viewed the packaging of the Product when purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Product did not contain any unnatural ingredients.

(d)    **WHERE:** Defendant made material misrepresentations and omissions on the Product's labels and packaging and marketing materials.

(e)    **HOW:** Defendant made material misrepresentations and omissions of fact regarding the Product by representing and warranting that the Product was comprised of just natural ingredients.  Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Product.  Reasonable consumers would understand Defendant's representations to mean that the Product did not contain anything artificial or synthetic, when that is not true.

(f)    **INJURY:** Plaintiff and members of the Classes purchased, and paid a premium (up to the full purchase price), or otherwise paid more for the Product than they would have, or alternatively they would not have purchased the Product at all, absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

24.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23, defined as:

*Nationwide Class*:  All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Product primarily for consumption (the "Nationwide Class").

*California Subclass:*  All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Product primarily for consumption (the "California Subclass").

25.     The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

26.     Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

27.     ***Community of Interest:***  There is a well-defined community of interest among Members of the Classes, and the disposition of the claims of these Members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

28.     ***Numerosity:***  While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

29.     ***Existence and Predominance of Common Questions of Law and Fact:***  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes.  These common legal and factual questions include, but are not limited to:

    (a) Whether Defendant's Product was comprised exclusively of natural ingredients;

    (b) Whether Defendant's Product contained synthetic preservatives and flavor additives contrary to a reasonable consumer's understanding of Defendant's label claims;

    (c) Whether reasonable consumers would understand Defendant's representations and warranties concerning its ingredient content to be untrue and misleading;

    (d) Whether Defendant's representations and warranties were material;

    (e) Whether Defendant was unjustly enriched as a result of its unlawful conduct alleged in this Complaint;

    (f) Whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.;

(g) Whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.;*

(h) Whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*;

(i) Whether Defendant was unjustly enriched; and

(j) Whether Defendant was aware of the composition and manufacture of its citric acid ingredient.

30.     ***Typicality:***  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the fruit juice composition of its Product, purchased the deceptive Product in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

31.     ***Adequacy:***  Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interest of the Members of the Classes.  Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

32.     ***Superiority:***  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress of their claims other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with

respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, *et seq*.
(On Behalf of Plaintiff and the California Subclass)**

33.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

34.     Plaintiff brings this claim individually and on behalf of herself, and the California Subclass against Defendant.

35.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

36.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

37.     Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

38.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers by advertising that the Product contained exclusively natural ingredients even though it contains a synthetic additive.

39.     Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

40.     On May 5, 2025, prior to filing this action, Plaintiff sent a pre-suit notice letter pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA.

41.     Plaintiff and the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of the Plaintiff and California Subclass)

42.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

43.     Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

44.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

45.     Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for her personal use.  In so doing, Plaintiff relied upon Defendant's false representations that the Product was comprised of exclusively "all natural ingredients," free of artificial preservatives and flavoring, when the Product actually contained a synthetic additive.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

46.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act."  Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any established state or federal law.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a

civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

47.     Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

48.     Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*, CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above.

49.     Defendant's acts, omissions, and practices concerning the Product constitutes "unlawful" business acts and practices in that they violate the CLRA.

50.     Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive "all natural ingredients" and "no artificial colors, flavors or preservatives" representations have misled consumers into purchasing the Product over other truthfully labeled competitors.

51.     Plaintiff and the California Subclass suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of a synthetic preservative and flavor additive.

52.     There is no benefit to consumers or competition from deceptively marketing that the Product is comprised of all natural ingredients when it is not.

53.     The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous,

offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

54.     Plaintiff and the Subclass could not have reasonably avoided their injury or known that the Product's prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures.  As such, they could not have reasonably avoided the injury they suffered.  Further, even if consumers read the fine-print ingredient list, they would have no reason to believe that the citric acid in the Product was synthetic and not natural.

55.     To the extent Plaintiff does not have an adequate remedy at law, she pleads her claim under the UCL in the alternative to their legal claims.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief.  Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff failed to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, which may exceed the available damages at law.

56.     For example, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted in this Complaint and legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail fewer elements.

57.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff and the other members of the Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500
### (On Behalf of Plaintiff and the California Subclass)

58.     Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

59.     Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

60.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the California Subclass, and the public.  As described throughout this Complaint, Defendant misrepresents that the Product is comprised of all natural ingredients.  Thus, consumers reasonably understand that the Product is free of anything other than natural ingredients, including synthetic preservatives and flavor additives.

61.     By Defendant's actions, they have disseminated uniform advertising regarding the Product across California and the U.S.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such advertisements were intended to, and likely did, deceive the consuming public.

62.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented that the Product is comprised of all natural ingredients and free of preservatives and non-natural flavor when it contains citric acid, a synthetic preservative and flavor additive.

63.     In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law.  Plaintiff and the members of the Subclass based their purchasing decisions on Defendant's material false and misleading representations and warranties about the composition of its Product.  Plaintiff and the Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

64.     The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

65.     Accordingly, Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiff, the Nationwide Class, and California Subclass)**

66.     Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

67.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass against Defendant.

68.     Plaintiff brings this claim under the laws of the State of California.

69.     Plaintiff and the Nationwide and California Class Members formed a contract with Defendant at the time Plaintiff and the Nationwide and California Class Members purchased the Product.

70.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging that it was comprised of wholly all natural ingredients.

71.     This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide and California Classes and Defendant.

72.     As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that the Product is comprised of all natural ingredients and therefore free of synthetic preservatives and flavor additives.  However, Defendant breached its express warranties about the Product by including citric acid, an artificial, synthetic preservative and flavor additive, thereby rendering the prominent "all natural ingredients" representation false and misleading.  Simply, the Product does not conform to Defendant's representations and warranties.

73.     Plaintiff and the Nationwide and California Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

74.     Plaintiff and the members of the Nationwide and California Classes would not have purchased the Product had they known the true nature of the Product.

75.     As a result of Defendant's breach of express warranty, Plaintiff and each member of the Nationwide and California Classes suffered financial damage and injury as a result and are entitled to damages, in addition to costs, interest and fees, and attorneys' fees, as allowed by law.

<u>COUNT V</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class and California Subclass)**

76.     Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

77.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass against Defendant.

78.     Plaintiff brings this claim under the laws of the State of California.

79.     This claim is brought in the alternative to the extent permitted by Fed. R. Civ. P. 8.

80.     Plaintiff the Nationwide and California Classes conferred a benefit on Defendant in the form of monies paid to purchase Defendant's Product.

81.     Defendant voluntarily accepted and retained this benefit.

82.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Product by falsely representing that the Product contained "all natural ingredients" when it does not, it would be unjust and inequitable for Defendant to retain money receives from its misbranded Product.

83.     Plaintiff and Members of the Nationwide and California Classes do not have an adequate remedy at law and so plead their claims for unjust enrichment in the alternative.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief.  Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff failed to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, which may exceed the available damages at law.

**<u>COUNT VI</u>**
**Fraud**
**(On Behalf of Plaintiff and the Nationwide Class and California Subclass)**

84.     Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

85.     Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass against Defendant.

86.     Plaintiff brings this claim under the laws of the State of California.

87.     At the time Plaintiff and Class Members purchased the Product, Defendant did not disclose, but instead concealed and misrepresented, that the Product was made from "all natural ingredients" when it contained citric acid, a non-natural, synthetic additive.

88.     Defendant affirmatively misrepresented to Plaintiff and Members of the Nationwide and California Classes that the Product was comprised of "all natural ingredients."

89.     By virtue of manufacturing the Product, Defendant knew that true composition and contents of the Product, including all ingredients it added to the Product.  Thus, Defendant necessarily knew that it was adding non-natural citric acid as it exercised control of the ingredients added.

90.     Defendant likewise was—and remains—in control of the branding, marketing, and labeling of the Product and so was aware of the express "all-natural" representations it printed prominently on its Product.

91.     Plaintiff and the Nationwide and California Classes did not know—nor could they have known through reasonable diligence—the true nature of the citric acid in Defendant's Product.

92.     Plaintiff and the Nationwide and California Classes have a right to rely on Defendant's representations as Defendant maintained sole control over the knowledge of the composition of its ingredients.

93.     Plaintiff and Nationwide and California Class Members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and the

Nationwide and California Classes to sustain actual losses and damages in a sum to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a)    For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b)    For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For an order of restitution and all other forms of equitable monetary relief;

g)    For injunctive relief as pleaded or as the Court may deem proper;

h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  November 14, 2025                    **BURSOR & FISHER, P.A.**

By:    /s/ *L. Timothy Fisher*
              L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

dguerra@bursor.com
jglatt@bursor.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (SBN 295032)
28 Geary Str STE 650 # 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (SBN 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff who resides in Oakland, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.  Additionally, Defendant transacts substantial business in this District, including sales of the Product at issue, and Defendant advertised and marketed the Product at issue to Plaintiff in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 14th day of November, 2025.

*/s/ L. Timothy Fisher*
L. Timothy Fisher